## Hurst v. Miracle, et al.

(Decided June 4, 1926.)

### Appeal from Bell Circuit Court.

1.  Adverse Possession.—Evidence held insufficient for jury on question of adverse possession of land, portions of which were shown to have been in possession only part of time claimed by persons, all of whom were not shown to be tenants of plaintiff.

2.  Trespass—Evidence Held Insufficient to Establish Plaintiff's Record Title to Disputed Lap from Which Timber was Cut.—In action for damages for cutting timber on disputed lap claimed by each party under patents, evidence held insufficient to establish record title in plaintiff to disputed lap.

E. N. INGRAM for appellant.

JAMES M. GILBERT for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

Appellant, alleging his ownership and actual possession of a described tract of land, brought this suit against the appellee, Albert Miracle, for damages for the cutting of timber by Miracle from the land mentioned. Miracle, by answer and counterclaim, alleged his ownership and possession of a described tract of land which, in part, overlapped the tract described in appellant's petition. He averred that the timber was cut from this lap and that, to the extent of the lap, his title was superior to that of appellant. By an intervening petition, appellee, Milburn Campbell, asked to be made a party defendant to appellant's suit because he was the immediate grantor of Miracle and liable on his warranty to Miracle should appellant be successful in this action. He set out a tract of land, out of which the conveyance to Miracle had been carved, alleged his ownership and possession of it, averred that it conflicted with appellant's claims and asked that his title be adjudged superior to that of appellant. Appropriate pleadings controverting the claims of Miracle and Campbell made up the issues. On the trial, after the appellant had introduced his evidence, the court peremptorily instructed the jury to find for appellees, and from the judgment dismissing appellant's petition entered on that verdict, appellant brings this appeal.

Appellant admits that to have been entitled to have his case submitted to the jury, it was incumbent upon

him to trace his own title back to the Commonwealth or to establish it by adverse possession for the necessary period.

So far as the latter alternative is concerned, appellant totally failed to establish any title by prescription. In directing the jury to find for appellees, the trial court said:

"A wide range has been given to allow the plaintiff (appellant) to establish a title by prescription; that is, by adverse possession to any part of the land in controversy. The proof has gone on to show that at times some one has lived there somewhere in that part of the country and no one has shown that any tenant has been in possession of the lap where the junior is lapped over on the senior or the Pursiful patent, if in fact it does that, and the proof has failed to show that there has been a continuous, adverse possession there for the time prescribed by law that would hold the title or vest title in the plaintiff (appellant) by reason of adverse possession."

The evidence fully warranted these remarks of the court. At best, it only went to prove that sometimes, some part of the land claimed by appellant was occupied by tenants. The extent of their possession is not shown. The continuity of their possession is not proven. Whether one tenant succeeded the one ahead of him immediately or only after an interval of a vacancy in the possession is not shown. Even the fact as to whose tenants they were is but seldom brought out. It is clear that there was no evidence upon which to send the case to the jury on the question of title by adverse possession.

To establish a record title from the Commonwealth to the property in question, appellant relies on two chains. One of these begins with the patents to Elijah Greene of July 18, 1843, and of July 2, 1845, numbered 4650 and 6241, respectively, each for 50 acres of land and a patent to James F. Greene of date September 17, 1849, for 200 acres, being number 30815. It is shown beyond doubt that the lap here in dispute is not covered by either of the Elijah Greene patents. So far as the James F. Greene patent is concerned, appellant introduced on the trial two deeds from James F. Greene to Elijah Hutchins, one deed being to confirm the other in which there was a

defect. These deeds included the James F. Greene patent. The appellant was then asked:

"I will ask you if these two deeds embrace *a part* of the same boundary of land that you indicated to the jury on the map awhile ago," to which question, appellant answered "Yes, sir."

The appellant had, as the question indicates, first shown to the jury on a map he had prepared, the outside boundaries of all the land he was claiming, which boundary also included the lap in dispute. Later on, appellant was shown a copy of this James Greene patent and was then asked if he was acquainted with the boundary therein described. The evidence then reads:

A. "No, sir, it is on the left fork of Williams Branch.

Q. "Does that patent embrace any of the land that you indicated to the jury awhile ago by pencil?

A. "Yes, sir, *part of it.*"

Appellant nowhere in his testimony or in that of any of his witnesses showed *what* part of his boundary the Greene patent covers nor did he show that the lap in dispute is a part of the Greene patent. It is impossible from a reading of this patent to identify it as any part of any of the land described in any of the pleadings. It therefore follows that appellant did not establish a record title to the disputed land by this chain.

The other chain goes back to the John Thompson patent of 600 acres bearing date July 5, 1846, and being number 8201. Appellant on page 15 of the transcript testifies that this patent covers the land claimed by Albert Miracle in this case. But appellant has some missing links in this chain of title. He was not able to establish three deeds offered in evidence, the first being that of George Hoskins and wife to Elijah Hutchins, the second being that of Jessie Durham to Homer Hoskins and the third being that of Hannah Hoskins to Elijah Hutchins. With these three deeds out, appellant does not show title to the disputed land back to the John Thompson patent.

Further, on the map introduced in evidence by appellant and vouched for as correct by him, there appears this notation: "Mount Pursiful 1,000 A Grant No. 20353-Sur. 4-2-1845." On appellant's examination, he was shown a certified copy of this Mount Pursiful patent and

testified that it was surveyed on the second day of April, 1845, and according to the date of its survey was older than either the John Thompson patent or James Greene patent. On page 29 of the transcript appellant, while testifying that he was not acquainted with the way his antagonist was locating the patent, said he was acquainted with the way "the court sets it out and the old patent." He further admitted that the Pursiful patent covered "some" of the land in dispute. The testimony of Oliver Hurst who helped to make the survey from which appellant's map was plotted is too long to copy here but when fairly read and construed it is to the effect that the lap here involved is included in the Mount Pursiful patent. This testimony, coupled with the admission of appellant first noted, convinces us that the lap is included within the Mount Pursiful patent and this being true, in as much as this patent is older in point of time, as shown by appellant's map and his testimony, than either the John Thompson patent or the James F. Greene patent, it must prevail over them and to the extent of any conflict, no superior title by record can be derived from either of the later patents.

Thus it appears that appellant failed to establish a record title to the disputed lap.

It follows that the trial court did not err in peremptorily instructing the jury to find for the appellees and its judgment is affirmed.